UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SUBHEIH JEBRIL,

        Plaintiff,        No. 06-CV-10800-DT

vs.        Hon. Gerald E. Rosen

UNITED STATES DEPUTY MARSHAL
KEVIN PETTIT,

        Defendant.
_____/

OPINION AND ORDER GRANTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on    March 30, 2007

PRESENT:  Honorable Gerald E. Rosen
                  United States District Judge

I.  INTRODUCTION

This *Bivens* action[1] is presently before the Court on United States Deputy Marshal Kevin Pettit's motion for summary judgment. Plaintiff has responded to Defendant Pettit's Motion and Defendant has replied. Having reviewed the parties' briefs and supporting evidence, the Court has determined that oral argument is not necessary. Therefore, pursuant to Eastern District of Michigan Local Rule 7.1(e)(2), this matter will

---

[1] *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999 (1971).

1

be decided on the briefs.  This Opinion and Order sets forth the Court's ruling.

## II.  PERTINENT FACTS

On November 24, 2004, Musa Abdallah Jebril, the husband of Plaintiff Subheih Jebril, and their adult son, Ahmad Musa Jebril, were convicted by a jury on 42 counts of conspiracy, bank fraud, wire fraud, mail fraud, money laundering, failure to file income tax returns, felon-in-possession of firearms and ammunition, and fraudulent use of a social security number.  The jury also found that the Defendants' interests in certain real properties were forfeited to the United States.  One of the forfeited properties was a home located at 4637 Palmer in Dearborn, Michigan (the "Palmer property").

In accordance with the jury's verdict, on January 12, 2005, the Court issued a Preliminary Order of Forfeiture of the properties -- including the Palmer property -- which extinguished the right, title and interests of Musa Jebril and Ahmad Jebril in the properties.  The Forfeiture Order further authorized the United States or its designee to seize the properties, and further authorized the United States to commence ancillary proceedings concerning the rights of any third parties.

According to the Affidavit of Diane Burrell, a Property Management Specialist in the United States Marshal's Office for the Eastern District of Michigan, for approximately 20 years, the following procedures have been used for executing preliminary orders of forfeiture with respect to criminal forfeitures of residential property.  First and foremost, the Deputy Marshal designated to execute the preliminary forfeiture order is instructed to follow the express language of the Order. [Defendant's Ex. 3., ¶

2

3(a).] When the Preliminary Order of Forfeiture states that the U.S. Marshal is authorized to "seize" the property, the Marshal is directed to follow whatever instructions are provided in the Order itself or by the Assistant U.S. Attorney assigned to the case. *Id.* at ¶ 3(b). The AUSA's instructions are often found in the standard Form USM-285 (a "Process, Receipt and Return" form). *Id.* at ¶ 3(c).[2] If no specific instructions are provided in the Order or by the AUSA, the following procedures are followed:

> 1. A locksmith is contracted to change or re-key the locks at the residence seized.
>
> 2. A Deputy Marshal is then dispatched to the residence to effectuate the seizure.
>
> 3. Upon seizure of the property, the locksmith changes or re-keys the locks and a set of keys is provided to the occupants if the residence is occupied.
>
> 4. The Deputy Marshal and an assistant, then enter the residence, inspect it for hazardous defects, and complete an "inventory report" form. Photographs of condition of the property may also be taken.
>
> 5. The Deputy Marshal, any assistants and the locksmith then leave the property in the possession of the occupants until a Final Order of Forfeiture is issued.

*Id.*

On March 8, 2005, United States Deputy Marshal Kevin Pettit was dispatched to execute the Order of Forfeiture with respect to the Palmer property. Prior to that date, Pettit had executed approximately 15 to 25 Preliminary Orders of Forfeiture issued by the

---

[2] According to the Affidavit of AUSA Julie Beck, the preparation and delivery of the Form 285 is a routine procedural task done by a paralegal, generally without specific direction of an Assistant U.S. Attorney. *See* Defendant's Reply Brief, Ex. 1, ¶¶ 3, 4.

United States District Court for the Eastern District of Michigan. The U.S. Attorney's office had delivered to the Marshal's office a copy of the Preliminary Order of Forfeiture and with it a form USM-285, which provided that the property should be "posted" instead of stating that it was to be "seized." According to the Affidavit of AUSA Julie Beck, "post the property" is the instruction given in the Form 285 for civil forfeitures; directing the property be "seized" is the appropriate instruction for a criminal forfeiture, such as the instant case. Beck Affidavit, Defendant's Reply Brief Ex. 1, ¶ 6. The paralegal assigned by AUSA Beck in this case apparently was not aware that she was doing a Form 285 for a criminal forfeiture, and hence, completed the Form with a direction for posting the property. *Id.*

Diane Burrell, the Property Management Specialist for the U.S. Marshal's Office, however, noticed the discrepancy when the Forfeiture Order and Form 285 were delivered to the Marshal's Office. Because she knew that the "post and walk" procedure was inapplicable in criminal forfeitures, and because the Order itself directed that the property be "seized," she directed Deputy Marshal Pettit to execute the Preliminary Order of Forfeiture on the Palmer property according to the standard U.S. Marshal's Service procedures for criminal forfeitures outlined above. *See* Burrell Affidavit, Defendant's Ex. 3, ¶ 7.

On March 8, 2005, Deputy Marshal Pettit went to the residence located at 4637 Palmer and knocked on the door. He did not know prior to arriving at the residence whether it was occupied. *See* Pettit Affidavit, Defendant's Ex. 4, ¶ 5. Pettit identified

himself and displayed his Marshals Service credentials to the female who answered the door and later introduced herself as Plaintiff Subheih Jebril.[3]  When asked if he could enter, Mrs. Jebril gestured for him to come in.  *Id.*  It was not until entering the house that Pettit realized Mrs. Jebril spoke very little English.  He, therefore, motioned that she should call an English-speaking friend or relative to assist her, which she did.  *Id.*

Shortly thereafter, a male relative of Mrs. Jebril who spoke English, who Pettit believed to be Mrs. Jebril's son-in-law, arrived at the residence.  *Id.* at ¶ 6.  Pettit identified himself, displayed his credentials and provided him with a copy of the Preliminary Order of Forfeiture, a Notice of Seizure, and a Certificate of Receipt. *Id.*  Pettit then explained what he would be doing to execute the Order.  *Id.*  A short while

---

[3] Although she never so stated in her Complaint, in her Response to Defendant's Motion for Summary Judgment, Mrs. Jebril now claims that Pettit's assertions that she answered the door and gestured for him to come in are false.  She claims she heard him knock on the door but did not answer it and that Pettit entered the house through an unlocked front door.  However, even accepting Mrs. Jebril's version of these facts, the U.S. Marshals Service is authorized to assess and secure real property subject to forfeiture.  *See* 21 U.S.C. § 853(g) which authorizes, in conjunction with the execution of a preliminary order of forfeiture directing the seizure of the forfeited property, the taking of any other action necessary "to protect the interest of the United States in property ordered forfeited."  Thus, a Deputy Marshal dispatched to execute a Preliminary Order of Forfeiture on a residence who upon knocking finds the residence unlocked certainly has a right to enter to see if the property is occupied or abandoned as he is obligated to ensure that such property is not dangerous or is not in such a state of disrepair that the value of the property is diminished.  Indeed, given that the execution of the Forfeiture Order here took place in January, it is likely that if the residence were unoccupied, pipes could have burst due to a lack of heat.  It would have been wholly reasonable, therefore, for Pettit, after receiving no answer to his knock on the door, to enter through the unlocked door to verify whether it was occupied or abandoned and to secure the property to prevent further damage to it.

later, Mrs. Jebril's daughter, Zenia Jebril, arrived at the residence.  For her benefit, Pettit again identified himself, displayed his credentials and explained the procedures that would be followed at the residence for executing the Preliminary Order of Forfeiture.  *Id.*

Zenia Jebril then called Jorin Rubin, who was Ahmad Musa Jebril's lawyer.[4]  *Id.* Defendant Pettit spoke on the phone with Ms. Rubin and explained to her that he was executing a Preliminary Order of Forfeiture.  *Id.*  While he was doing so, the locksmith hired by the U.S. Marshals Office re-keyed the front door of the residence.  *Id.*  An assistant also inspected and photographed the residence.  *Id.*  When Pettit and his assistant were done, Pettit provided Mrs. Jebril with a new key to the house and then left the premises.  *Id.*

After Deputy Marshal Petit and his assistant left the residence, and presumably in response to the Preliminary Order of Forfeiture, on March 8, 2005, Mrs. Jebril filed a Petition to Adjudicate the Validity of her interest in the forfeited Palmer property.[5]  Then, on February 22, 2006, Mrs. Jebril instituted the instant action claiming that by entering the Palmer Street residence, taking pictures and changing the locks, without her consent, Deputy Marshal Pettit violated her Fourth Amendment right to be free from unreasonable searches and seizures.

---

[4] Jorin Rubin is also now representing Ahmad's mother, Subheih Jebril, in this action.

[5] The proceedings concerning the claims of third parties on the various properties -- including Mrs. Jebril's claim concerning her alleged interest in the Palmer property -- are still ongoing.

III.  DISCUSSION

A. PLAINTIFF'S CLAIM TO THE PALMER PROPERTY CANNOT BE ADJUDICATED IN THIS ACTION

The process of imposing a criminal forfeiture upon a defendant convicted of a federal crime is codified both in the pertinent statutes and the Federal Rules of Criminal Procedure.  In this case, the Preliminary Order of Forfeiture was issued pursuant to Fed. R. Crim. P. 32.2, 18 U.S.C. § 982(a)(2)(A) and 21 U.S.C. § 853.  Under criminal forfeiture law, title to the forfeited property vests in the United States at the time the defendant commits the unlawful act and attaches upon the defendant's conviction.  21 U.S.C. § 853(c).  *See also United States v. Nava,* 404 F.3d 1119 (9th Cir. 2005); *United States v. Puig*, 419 F.3d 700 (8th Cir. 2004).  Although the Government does not receive clear title to the property until all of the requirements of Section 853(n) are satisfied,[6] an order of forfeiture, whether preliminary or final, is final as to the defendant.  *See United States v. Pellulo*, 178 F.3d 196 (3rd Cir. 1999); *United States v. Bennett*, 147 F.3d 912 (1998) (citing *United States v. Christunas*, 126 F.3d 765, 768 (6th Cir. 1997); *United States v. Libretti*, 38 F.3d 523 (10th Cir. 1994).

Pursuant to Fed. R. Crim. P. 32.2, a district court may issue a preliminary order of forfeiture after the defendant is convicted to enable the Government to seize the specific

---

[6] 21 U.S.C. § 853(n) sets forth the requirements for publishing notice of the Preliminary Order of Forfeiture and the procedures to be followed for lodging and adjudicating claims of legal interest in the forfeited property.  It is only after all petitions filed are disposed of that the United States acquires legal title to the forfeited property. *See* 21 U.S.C. § 853(n)(7).

property forfeited in the underlying criminal action. As the court explained in *United States v. Kennedy*, 201 F.3d 1324, 1326 n. 5 (11th Cir. 2000), "Preliminary forfeiture orders. . . are primarily used to enable the Government to marshal the defendant's assets subject to forfeiture."

>Fed. R. Crim. P. 32.2 provides, in relevant part:

>(1) **In General**. As soon as practicable after a verdict or finding of guilt, or after a plea of guilty or nolo contendere is accepted on any count in an indictment or information regarding which criminal forfeiture is sought, the court must determine what property is subject to forfeiture under the applicable statute. If the government seeks forfeiture of specific property, the court must determine whether the government has established the requisite nexus between the property and the offense. . . . The court's determination may be based on evidence already in the record, including any written plea agreement or, if the forfeiture is contested, on evidence presented after the verdict or finding of guilt.

>(2) **Preliminary Order**. If the court finds that the property is subject to forfeiture, it must promptly enter a preliminary order of forfeiture setting forth the amount of any money judgment or directing the forfeiture of specific property ***without regard to any third party's interest in all or part of it. Determining whether a third part has such an interest must be deferred until any third party files a claim in an ancillary proceeding under Rule 32.2(c)***.

>(3) **Seizing Property**. The entry of a preliminary order of forfeiture authorizes the Attorney General (or a designee) to seize specific property subject to forfeiture.

Fed. R. Crim. P. 32.2(b) (emphasis added).

Accordingly, a preliminary order of forfeiture which authorizes the Government to seize criminally forfeited property is properly executed when a Deputy U.S. Marshal, as the Attorney General's designee, "seizes," i.e., takes possession of, the property identified

8

in the order.  *See* Black's Law Dictionary, 8th ed. 2004 (defining "seize" as "1.  to forcibly take possession (of a person or property); 2. to place (someone) in possession; 3. to be in possession (of property)").

In this case, Defendant Pettit took "constructive possession" of the Palmer property pursuant to Preliminary Order of Forfeiture by changing the locks and providing the occupants with the keys, inspecting the premises, and taking photographic inventories of the property without evicting the occupants.  Upon completion of these tasks, he exited the property and left the occupants in possession of the seized residence, pending a Final Order of Forfeiture to be entered by the Court.

Plaintiff argues that Preliminary Order does not give the Government the right to come into a home that they knew to be occupied by innocent people.  However, Plaintiff obviously ignores the plain language Rule 32.2 and 21 U.S.C. § 853 which establish that a Preliminary Order of Forfeiture of property is issued "without regard to any third party's interest in all or part of it" and that "determining whether a third party has such an interest must be deferred until any third party files a claim in an ancillary proceeding." *See also United States v. Schlesinger*, 396 F. Supp. 2d 267, 273 (E.D.N.Y. 2005) (noting that the extent of a defendant's or any other party's interest in criminally forfeited property is not an issue in determining the validity of a preliminary order of forfeiture). The ancillary hearing provided in 21 U.S.C. § 853(n) is the exclusive proceeding through which third parties may claim interests in property subject to forfeiture.  *See* Fed. R. Crim. P. 32.2(c).  Section 853(k) further expressly prohibits a third party claimant in

9

criminally forfeited property from filing a separate action to adjudicate his or her claim to the property.[7] Thus, Plaintiff's claim to the Palmer property cannot be adjudicated in this action.

B.  DEFENDANT PETTIT IS CLOAKED WITH ABSOLUTE AND QUALIFIED IMMUNITY

Plaintiff here is suing Deputy U.S. Marshal Pettit in both his official and individual capacity contending that by entering her home, changing the locks and taking pictures of her house, Pettit violated her constitutional right to be free from unreasonable searches and seizures. Plaintiff's claims, however, fail because Pettit is cloaked with absolute and qualified immunity.

1.  Plaintiff's Claim Against Defendant Pettit in his Official Capacity is Absolutely Barred Under the Doctrine of Sovereign Immunity

The United States as a sovereign is immune from suit for money damages unless it unequivocally has waived such immunity. *Reed v. Reno*, 146 F.3d 392, 397-98 (6th Cir.1998). The doctrine of sovereign immunity not only bars suits against the United

---

[7] 21 U.S.C. § 853(k) states:

Except as provided in subsection (n) of this section, no party claiming an interest in property subject to forfeiture under this section may --

(1) intervene in a trial or appeal of a criminal case involving a forfeiture of such property under this section; or

(2) commence an action at law or equity against the United States concerning th validity of his alleged interest in the property subsequent to the filing of an indictment or information alleging that the property is subject to forfeiture under this section.

States when the plaintiff seeks monetary damages but also extends to suits for money damages against officers and agents of the United States in their official capacities. *Id.*; *Ecclesiastical Order of the Ism of Am, Inc. v. Chasin*, 845 F.2d 113, 115-16 (6th Cir.1988); *Blakely v. United States*, 276 F.3d 853, 870 (6th Cir. 2002). *See also Nuclear Transport and Storage, Inc. v. United States*, 890 F.2d 1348, 1352 (6th Cir.1989), *cert. denied*, ___ S.Ct. ___ (1990) (the United States and its officers in pursuit of their official duties remain protected from a *Bivens* claim by the doctrine of sovereign immunity). Because Plaintiff here seeks money damages for the alleged unconstitutional seizure of her property, her *Bivens* claim against Deputy United States Marshal Petit in his official capacity is barred.

2.  Defendant Pettit Cloaked With Qualified Immunity from Suit on Plaintiff's Individual Capacity Claim

In *Bivens*, the Supreme Court held that individuals could "recover money damages for any injuries [they have] suffered as a result of [a federal agent's] violation of the [Constitution]." 403 U.S. at 397. As with § 1983 actions against state and local officials, the Supreme Court has held that a claimant seeking relief under *Bivens* must overcome the federal official's qualified immunity. *Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151 (2001). To overcome that immunity, claimants must show (1) that the agents violated their constitutional rights and (2) that the constitutional right at issue is sufficiently clear that a reasonable official would understand that what he is doing violates that right. *Id.*, 533 U.S. at 202, 121 S.Ct. at 2156 (quotations omitted); *Baranski v. Fifteen Unknown*

11

*Agents of Bureau of Alcohol, Tobacco and Firearms*, 45 F.3d 433, 438 (6th Cir. 2006).

Plaintiff here cannot satisfy even the first prong of this test. She cannot show that the actions taken by Deputy Marshal Pettit in "seizing" her home -- entering the home, taking pictures and changing the locks -- were unconstitutional. First, to the extent that Plaintiff complains of the taking of photographs, the Sixth Circuit has expressly held that photographs taken by law enforcement officers while legally on the property do not "meaningfully interfere" with any possessory interest and hence, do constitute a "seizure" as a matter of law. *See Bills v. Aseltine*, 958 F.2d 697, 707-08 (6th Cir. 1992). With respect to entering the property and changing the locks, not only was Defendant Pettit specifically directed by the Court's Preliminary Order of Forfeiture to effectuate the seizure of the property but also the particular complained of seizure actions are actions specifically authorized in the forfeiture statute itself which directs the taking of all "appropriate measures necessary to safeguard and maintain property ordered forfeited . . . pending its disposition." 21 U.S.C. § 853(I).[8]

For these reasons, the Court concludes that Plaintiff cannot establish that Defendant Pettit's actions violated her Fourth Amendment right to be free from unreasonable search and seizure. Therefore, she cannot overcome Defendant Pettit's qualified immunity.[9]

---

[8] Plaintiff does not challenge the constitutionality of the statute.

[9] Because the Court finds that Plaintiff has failed to establish the first prong of the qualified immunity test -- a violation of a constitutional right -- the Court need not

CONCLUSION

For all of the reasons set forth above in this Opinion and Order,

IT IS HEREBY ORDERED that Defendant's Motion for Summary Judgment is GRANTED.  Accordingly,

IT IS FURTHER ORDERED that this case be, and hereby is, DISMISSED, with prejudice.

                              s/Gerald E. Rosen
                              Gerald E. Rosen
                              United States District Judge

Dated: March 30, 2007


I hereby certify that a copy of the foregoing document was served upon counsel of record on March 30, 2007, by electronic and/or ordinary mail.

                              s/LaShawn R. Saulsberry
                              Case Manager

---

address the second prong of the test (whether the constitutional right was "clearly established.") *See Saucier, supra*, 121 S.Ct. 2156.